Next case called for oral argument is in re the Marriage of Miller. Council. Morning.  Taylorville, Illinois. Yeah. Respondent appellant Miller. Case arises. There are three issues on appeal here. And those are the portion of the workers top settlement maintenance and a balancing payment of $8,500 other issues of the judgment of disillusioned appeal. What I'd like to do today is focus on how the issues are entered interdependent how they interplay with each other and in the context of the entire war. Now the parties were married 11 896. They separated and reconciled in 2003 after seven years of 340 trial for their final separation was 3507. Now, Mr. Terry Miller works for Amarin C. I. P. S. At 711 76. That was over 30 years. Now, Mr. Miller, therefore working man. We are basically here today because Mr. Miller cannot understand or finds it very difficult to understand how a court gives his ex-wife 45% shortly after they separated the final time. He received a workers top settlement for $84,000 and what that was for during the 30 years that Mr. Miller was working. He gradually destroyed his knees and his back and then one day something popped and he had to go under the knife or lumbar surgery and he received this $84,000 for 2.5% loss. The one leg 25% loss of use of the other leg and 25% loss of use of the body as a whole. He went under the knife and I think he was back to work in six weeks or two, two months. During the course of that, he didn't lose anything. He didn't lose any income whatsoever. He had good insurance benefits through Amarin. He had six days accumulated. He had time vacation time and he didn't have any bills to pay. If he had others a union fund that would have helped him out on that. So there was absolutely no loss to the income of the family during marriage. And yet the court trial court awarded the wife 45% of that settlement. You're not disputing that it's marital property, are you? Absolutely not. Okay. No, sir. For that, he got nothing in return. The case of in-ring marriage at DeRosette, the Supreme Court clearly said, cited in both briefs, it clearly said that the workers comp settlement, which accrues during the marriage is marital property. But the court was very careful to go on to say that in that case or in many cases, there's a reason to deviate from a 50-50 approach to settlement. In most cases, there is a deviation. I think we can look at the cases cited in the briefs. We see that in DeRosette, there was a 30% award to the wife, which was upheld by the court. There are some other cases which are cited by DeRosette, which support the proposition that the court should look at the injured party and I don't want to say most cases because the case doesn't say most cases. But in many cases, there is justification to award a larger portion of that settlement to the injured spouse. I think even a working man can comprehend the concept of marital property. But what the working man can't comprehend, in this case particularly, is how, when there's everything else, nothing changes. How does she get $38,000 of his workers comp settlement? And that in and of itself doesn't make sense unless you look at how the other factors interplay. A couple of the cases I think should be mentioned. Well, I think, let me back up. The first thing that complicates this issue is that there was a dissipation of assets and he had that $84,000 and he said about spending that basically like he would anything else. I don't think he realized at the time that it was marital property, but that's no excuse. But he said about, he went hunting, he went fishing, he bought some things, he gambled, he lost some money and claimed that the money was entirely gone. And you can see in the the court's decision, which the judgment of dissolution, which is in the appendix to our brief, the court really didn't buy that argument and said it really doesn't matter. It is a marital asset and for these reasons, after going through all of the things that Mr. Miller said in court is how he spent it, he said for these reasons, I'm going to award her 45% of this asset. That's a punishment award. That isn't an analysis of his condition. It is an analysis of how that affects anything else in the judgment of dissolution. It is simply a punishment award. If you look at the case, the case decided by Ingray marriage of DeRoss, that you'll see only one case where there was actually a 50-50 split of a asset which, you know, workers' comp settlement, which was approved by the court. And in that case, it's called Ingray marriage of Hall. It's talked about on page 31 of our brief. And in that case, the court found justification for it because after a careful analysis of the factors, the court pointed out that, and I mean the appellate court pointed out that the wife was in her mid-50s. She had a ninth grade education, no training, had some physical problems, and had not worked in many years. So for those reasons, that 50-50 split was justified, which I think one of the things that's interesting about Hall, which is a third district case, is the appellate court felt that it had to justify it. Otherwise, there's no justification for a 50-50 split. It doesn't say that you have to do that. It doesn't say anywhere in 504, Marriage Dissolution of Marriage Act that it isn't a 50-50 split in some cases, and it is in others. But if you look at the case law, then there's always something there. In the case, in this Miller case, you don't have any of the things you had in Hall. The wife doesn't have a ninth grade education. She has a high school education, the same as the husband. She has training. She has a job. She worked throughout the marriage. She continues to work. If anything, her job now is better than it ever was before. And there's just nothing there to, she does have some physical problems. She has epilepsy, which was run up the flagpole. She has these mild epileptic seizures on occasion, but that's a genetic problem. She had it before. It's never interfered with her work. So, I ask you to look at those things and consider that Mr. Miller got nothing in return. If we look at the maintenance award, we go next to that, he was not relieved of any obligation for paying maintenance. In another case, it's talked about in the brief, In Re Marriage of Burke, the court noted that the party who gave up part of his workers' comp award was relieved of the obligation of paying maintenance. And Mr. Miller didn't get relieved of any obligation there at all. So, again, looking at the interplay of those things, there's no justification for that. And I would ask the court to consider, that somebody consider the language of the Supreme Court in In Re Marriage of Durosset and give some consideration to Mr. Miller's pain and suffering. Another aspect where he didn't gain anything was his pension. If a workers' comp settlement is to compensate someone for loss of future earning capacity, he may have to retire early, well, she got 17% of his pension, which was the full 50% of his, of the marital portion of the pension. So, nothing was gained there. To move on to the $8,000, $500 balancing award. The court in this case, and went to great length in the brief to in creating tables from the record, which showed that the court divided a net equity of $290,482.65. That's what the parties were worth. An equal split would be $95,241.33. The wife got $110,000 roughly of the the equity split up. She got $15,000 more than half. Now, that includes that that workers' comp settlement. If we back out the $8,500 for the balancing award from that, she was left with $101,518, which is still more than $5,000, more than half. So, the court awards most of the, or 45% of the workers' compensation award, and he gains nothing on the property either. And then the court says, but to balance the equities, I'm going to award another $8,500. Well, it wasn't a balance. It was an extra award because there's nowhere, anywhere was any kind of an analysis done. If you trace it back, as I did in the brief, where did this balancing come from? It comes from the pre-trial memorandum, or as we explain in the, we call it the local court rule, a proposed property apportionment. We submitted, which had a detailed proposal for the court as to how we would ask the court to divide the assets of the parties. Now, at the end of that, we said, he gets most of the assets, so she should get another $8,500. But the court did not follow that proposed property award. When it did that, part of that property award was to, or our proposal was that he would be allowed to buy her out of his pension, which he was not allowed to do. She got a bigger share of the the Merrill's property, the personal, I mean the real estate. She got $23,000 of that. That was more than we proposed. We proposed no maintenance, which the court awarded maintenance. So when you take all that out of context, you take that $8,500 out of the context of all those things that we proposed that didn't happen, it has no meaning at all. It has no meaning at all. And yet the court somehow thought it was going to balance the work and just pick this up. Now, I'm waiting for the question, I guess. I think I anticipated the question. Couldn't the court award just award her more anyway? Well, surely it could. But it didn't think it was doing that. It chose not to do that. It thought it was balancing things and it didn't balance things. Now, how does this $8,500 play into, you know, the other, the rest of it? Well, it's the same way. It should have been counted. And I guess we should move on to the maintenance thing while we still have a couple minutes left. The maintenance issue, you look at the statutory factors and the very first factor is to look at the income of the parties and the property awarded. Well, it gives up 45%, $38,000 of his award and he gives up another $8,500 and still has to pay maintenance. Not relieved from anything there. So these three interplay in that fashion. Also, we see, you know, interplay with the rest of the decision. She gets 17% of the pension. She gets $23,000 of real estate. He had to buy her out. She got her own 401k for almost $24,000 and nothing in return. Everything went her way. And if you look at all three of these, it's just really, I'd say, an abuse of discretion. Let me ask you this. Are you saying that, is your argument that the actual distribution is an abuse of discretion? Or are you saying that if the trial court intended to quote-unquote balance, but in effect made a distribution of marital property that was not balanced, that in effect is an abuse of discretion? I don't think, sir, that it would be an abuse of discretion to just, if the court said for these reasons, I am going to award her a greater share of the personal property. I'm going to award her a cash award to compensate that. If the court did that and had reasons for it, that would certainly be allowable. But typically when the court does that, it is to provide for support, provide extra assets for support, which the maintenance is still there. He's still straddled with that maintenance issue. So in the fact that the court took away by mistake and gave nothing back on his side of the call. I see. I think your time has expired. Thank you, Counselor. Now. What? I think your time has expired. Hasn't it? Yes. Yeah. You'll have time for rebuttal. Counselor. They're waiting for a second, please. Please support. Paul. I would like to address the court with some general thoughts and then go into the specifics. I would like to talk about what the trial court judge looked at and saw and how that ultimately affected the credibility of the respondent, Mr. Miller. In the first page of the judgment, the court talked about the respondent denying signing the quit claim deed and that he, the court observed that the respondent's testimony and demeanor did not make him credible. That's the first page of the judgment. He also talks about the way the respondent behaved throughout the trial. He used words like rude, truculent, disruptive, interrupting, insulting, unpleasant. He characterized the whole thing as an unpleasant ordeal. He further went on to characterize the respondent's behavior as outrageous, reprehensible, and deplorable. He said that his behavior was vindictive, despicable, immorally reprehensible, and he ended it by calling his behavior as being deplorable. The point of this is, we all know that fault or misbehavior in marriage does not impact the way we decide the property settlement, maintenance, anything like that. But what all these things did is they go back to the basic concept of credibility of the respondent. The judge was there. He heard what the respondent said about, I mean, anecdotally, the $40,000 or $50,000 or the $80,000 he lost in the card game down the street at Joe's Tavern. Judge McGuire saw all these things. He weighed the credibility and he came to decisions. He came to a decision on the issue of maintenance. And he looked at the statutory reasons why he should have been ordered to pay maintenance. He originally went with permanent maintenance. He retrenched from that. He came back and said, well, we're going to do temporary maintenance. We're going to review it in 36 months. But he looked at the disproportionate earning capacity of the respondent versus my client. He looked at other things that the respondent could do in order to free up money to pay the maintenance. He looked at all the statutory considerations and there's no question that he did not abuse his discretion in coming to the decision he came to. It's not outrageous that where nobody else could have made that decision and it's consistent with how he's trying to balance the life of the parties after they break up versus what he observed the life of the party was when they were married. Granted, the duration of the marriage is 10, I think it was 125 months, a little over 10 years, 10 years, 5 months. But this is not an abuse of discretion. In this case, a lot of support, as I cited in my preview. Now, if you go into the issue of the work comps element, the issue seems to be with regard to the appellant's position that the court abuses discretion there by up to 45% of the total. Well, again, the court looked at the credibility of the respondent. It looked at all of the statutory consideration under under that part of the statute and it outlined why they were giving him giving her a part of the appellant's element. We all know it's marital property. There's no question about that. And again, I believe there's a presumption that once that it was determined by the court to be marital property, that you weren't going to torture the the evaluation process under 503 D and under, like they did under Wagner and come back with something that said that she was entitled to nothing. Again, there was no abuse of discretion with regard to the work comps element. Then you go into the third issue that was appealed and I hope you're feeling better. We put them off to the side. My point is on this $8,500. You can accept everything that the appellate says. Go ahead and do it. You know, he just threw out $8,500 for this balancing but again, his client, the appellant, is so wrongfully abused that it was abuse of discretion by the public court. Except that my client had to pay between $20,000 and $25,000 in attorney fees which aren't taken into consideration in the mix in the dissolution of marriage and the distribution of the marital symbol or marital properties. So there's a swing there of $15,000 and there's another $10,000 we got to spend on a health board attorney fees. So what we have is a person who is described by the court in terms you very rarely see which ultimately affect the respondent's credibility and the judge sat there through practically five days of trial. He got to see what happened. He saw and heard all the testimony and and what the the issue about the financial affidavit of the parties. Financial affidavit under the local rules is something that is accepted into the into the record. At the beginning of the case, you're obligated to have on file a financial affidavit when you start a divorce case. So it's not like that financial affidavit wasn't part of the record. Is there anything in the record as to the husband's attorney's fees? That's a good question, Judge, because if you look at the attached if you look at the attached document which was provided by the appellate and direct your attention to A20 of the appellate brief appellate's brief completely devoid of any reference to attorney fees. Was there any testimony as to attorney's fees or Judge, I don't remember it. I don't remember that he paid any attorney fees. I know he complained about attorney fees that he paid from the other two attorneys that fired him before he came into contact with Mr. Paul. But you know when we started out with Judge McGuire saying you're going to get attorney fees. I'm going to give you 15,000 of the $23,000 that you proved up in court. He came back and I think in an abundance of caution because he didn't want to appear that he was punishing the appellate the respondent Mr. Miller. He wipes that off the table on the motion reconsidered. That that sways the balance of the distribution of the assets and debts considerably towards the appellate in this situation. The idea that he is somehow abused that he can no longer work and do the things he needs to do to pay maintenance. Throughout the testimony is he's still working. He's not losing any wages because of any health concerns. He still goes hunting. He still goes fishing. I may have misstated that he had still gone hunting up until the time he had lost his boy car or something like that. But you folks know the law, you know, the issue of abuse of discretion. I don't want to belabor this but it would seem to me Judge McGuire made the right decision all the way along. He heard everything. He entered his judgment based on the things he observed and the credibility of the parties and the evidence. And I would ask that this be allowed to stand. Thank you. Thank you. Counsel. Counsel's argument supports the proposition that I put forth. The award of the 45% of the workers confidence settlement was in fact a punishment. I mean Counsel went through all of the words, despicable, deplorable, etc, etc. But in the judgment of dissolution, the last two sentences the court wrote with regard to that comp settlement is it was clear that respondent had dissipated a substantial marital asset in the amount of $84,617.40. Whether he had thrown it away in a card game or hidden it in a secret account. For these reasons, petitioner is awarded $38,077.83 of this asset and judgment is entered in favor of the petitioner in this amount. For these reasons, those are the words of the court. Now, once the trial court decides that the asset is dissipated and that it should be divided, the dissipation should not be based upon punishment for being despicable. The Lord will do that. I don't know who does, who punishes for despicable. Maybe that's a contempt of court thing. But once it's decided, it should be divided according to the law. And the law, in the cases we've cited in the brief and most importantly in the Durosset case, says in many cases it is appropriate to award a larger portion, if not all, of the asset to the injured party. And there is no justification whatsoever for ignoring my client's pain and suffering in this case. With regard to maintenance, I guess maintenance wouldn't be so bad for three years if it wasn't for the fact that you've given up, it's this interplay again, you've given up $38,000 in one over here, you've given up $8,500 over here as part of a mistake. I'm not here to argue my client's, that he's warm and fuzzy all the time, okay? But he deserved a fair break and I don't believe he got it. Thank you, counsel. We appreciate the briefs and arguments of counsel. Are you finished? I'm sorry. Yes, sir. Okay. We'll take the matter under advisement. Court will be in a short recess. Thank you, guys.